IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 2, 2020

**IN RE JESSICA V., ET AL.**

**Appeal from the Chancery Court for Hardin County**
**No. AD-443    William B. Acree, Senior Judge**

_____

**No. W2019-01700-COA-R3-PT**

_____

The trial court terminated a father's parental rights to his children on the grounds of (1) abandonment by willful failure to visit, (2) abandonment by willful failure to support, (3) abandonment by engaging in conduct prior to incarceration that exhibits a wanton disregard for the children's welfare, and (4) failure to manifest an ability and willingness to personally assume custody of or financial responsibility of the children.  The trial court also found that termination of the father's parental rights was in the best interest of the children.  Finding clear and convincing evidence in support of the trial court's determinations, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Joe L. Brown, Savannah, Tennessee, for the appellant, Daniel V.

Katie P. Hagenbrok, Savannah, Tennessee, for the appellees, Ronnie D. and Kimberly D.

Melissa G. Stewart, Guardian *ad litem*.

## OPINION

## I. BACKGROUND

Twin sisters Jessica V. and Julianna V. ("the Children") were born to Lana V. ("Mother") and to Daniel V. ("Appellant") in 2008.[1] Mother and Appellant were married to each other at the time of the Children's birth. Ronnie D. and Kimberly D. ("Appellees") are the Children's maternal aunt and uncle.

In December 2008, when the Children were four months old, Mother and Appellant had a physical altercation while the Children were in the home. Appellant claims that Mother assaulted him with a knife, but Appellant pleaded guilty to domestic assault in connection with the incident.

In February 2009, Appellant moved to Texas for work. He travelled back and forth between Texas and Tennessee during most of 2009, then remained in Texas from December 2009 to November 2010. During this time, Appellant and Mother were having disagreements. Soon after returning to Tennessee in November 2010, Appellant was arrested and charged with aggravated burglary. The Children were two years old at the time. Appellant was convicted, sentenced to nine years in prison, and incarcerated from September 5, 2011, until May 10, 2016, when he was granted parole.

Upon his release from prison until September 2016, Appellant lived in a halfway house and began working. At the time, he did not attempt to regain custody of or visit the Children. Appellant then sought visitation with the Children in October 2016. During the fall and winter of 2016, Appellees facilitated visitation by transporting the Children to Appellant, and allowed him to see the Children whenever he requested. The weekend visitation between the Children and Appellant ceased in April 2017. Despite the Children's reluctance, Appellee Kimberly D. drove the Children to see Appellant on July 4, 2017. This was the last time Appellant saw the Children. Appellant was arrested again on November 7, 2017, and has been incarcerated ever since. Thus, Appellant has been incarcerated for the majority of the Children's lives.

Appellees have been involved in the Children's lives since their infancy. During the time between Appellant's residency in Texas in 2009 and his arrest in 2011, Appellee Kimberly D. picked up the Children and kept them in her home every weekend. In December 2010, Mother and Appellee Kimberly D. consented to the entry of a joint custody order.[2] In 2013, Mother had a car accident while the Children were in the car,

---

[1] Mother is not a party to this appeal.

[2] This order was entered by the Juvenile Court of Wayne County, Tennessee.

resulting in charges of reckless endangerment and driving under the influence.[3]   In February 2014, the Children were five years old, Appellant was still incarcerated, and temporary custody of the Children was transferred to Appellee Kimberly D.  In its corresponding order, the Wayne County Juvenile Court found that there was a substantial risk of harm if the Children were to be placed in Appellant's custody.

Appellees had legal and physical custody of the Children until August 2014, at which time they returned the Children to Mother's physical custody to allow her to reestablish a relationship with them.  In May 2015, Mother lost her home and went to jail to serve time for previous convictions, so the Children were returned to Appellees' physical custody.  Appellee Kimberly D. began taking the Children to counseling in August 2017 due to behavioral problems that manifested after the Children received telephone calls from Mother and Appellant.  The Children were diagnosed with post-traumatic stress disorder.

The proceedings underlying this appeal began on December 6, 2017, upon Appellees' filing of a Petition for Adoption by Relatives and for Termination of Parental Rights ("the petition").  Mother did not answer the petition or otherwise participate in the case, except for filing an affidavit in which she waived the right to notice of the proceedings and affirmatively agreed that adoption by Appellees served the Children's best interest.  Appellant filed four answers to the petition: the first pro se, the second through appointed counsel, and the third and fourth through newly appointed counsel.

The case proceeded to a final hearing on June 5, 2019.  Appellees, Appellant, and the Children's stepbrother, Nicholas D., testified.[4]  At the time of trial, the Children were almost eleven years old, and a guardian *ad litem* represented their interests.  Appellant was still incarcerated and awaiting trial on charges of aggravated burglary and theft.  By order entered August 20, 2019, the trial court granted the petition and terminated Mother's and Appellant's parental rights.  Appellant's parental rights were terminated on the grounds of (1) abandonment by willful failure to visit, (2) abandonment by willful failure to support, (3) abandonment by engaging in conduct prior to incarceration that exhibits a wanton disregard for the Children's welfare, and (4) failure to manifest an ability and willingness to personally assume custody of or financial responsibility of the Children.  The court found that termination of Mother's and Appellant's parental rights was in the best interest of the Children.  Within its final order, the trial court entered a Final Decree of Adoption declaring the Children to be the adopted children of Appellees and changing the Children's surnames to that of Appellees.  This appeal followed.

---

[3] Mother has a history of addiction to alcohol and prescription pain medication.

[4] The testimony will be outlined in greater detail below as relevant to the issues on appeal.

## II.    ISSUES

A.    Whether clear and convincing evidence supports the trial court's finding that Appellant abandoned the Children by willful failure to visit.

B.    Whether clear and convincing evidence supports the trial court's finding that Appellant abandoned the Children by willful failure to support.

C.    Whether clear and convincing evidence supports the trial court's finding that Appellant engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the Children.

D.    Whether clear and convincing evidence supports the trial court's finding that Appellant failed to manifest an ability and willingness to personally assume custody of or financial responsibility of the Children.

E.    Whether clear and convincing evidence supports the trial court's finding that termination was in the best interest of the Children pursuant to Tennessee Code Annotated section 36-1-113(i).


## III.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

Although parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See In Re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence

of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Audrey S.*, 182 S.W.3d at 861 (citations omitted). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination

of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H*., 483 S.W.3d 507, 523-24 (Tenn. 2016) (citations omitted); *see also In re Gabriella D*., 531 S.W. 3d 662, 680 (Tenn. 2017).

## IV.   DISCUSSION

### A., B. & C.[5]
*Abandonment*

Parental rights may be terminated for abandonment, as defined in Tennessee Code Annotated section 36-1-102. Tenn. Code Ann. § 36-1-113(g)(1). As applicable to incarcerated parents, the statute defines "abandonment," in pertinent part, as follows:

A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv).[6]  In the context of abandonment:

---

[5] Appellant does not raise the ground for termination stated in issue C. In such cases, our Supreme Court instructs: "[I]n an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H*., 483 S.W.3d at 525-26 (internal citation and footnote omitted). Accordingly, we will review all of the trial court's findings.

[6] Under the law in effect when the petition was filed, the element of willfulness was essential to determining whether abandonment had occurred. *In re Audrey S*., 182 S.W.3d at 863. Under the current version of Tennessee Code Annotated section 36-1-102, willfulness is an affirmative defense.

> Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty, or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child[.]

*In re Audrey S.*, 182 S.W.3d at 864 (citations omitted). Furthermore, the statute requires that parents offer their children more than "token visitation," defined as visitation that "under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C). Parents are also expected to offer more than "token support," which "means that the support, under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B).

Here, Appellees filed the petition to terminate parental rights on December 6, 2017. Appellant was arrested on November 7, 2017, and has been incarcerated since. Thus, the relevant time period to consider Appellant's visitation with or support of the Children was from July 7, 2017, through November 6, 2017, the day before the incarceration date.[7] *See In re Matasia R.*, No. E2018-01834-COA-R3-PT, 2019 WL 4127392, at *4 n.5 (Tenn. Ct. App. Aug. 30, 2019).

The trial court found that Appellant last visited with the Children on July 4, 2017, and deemed this a token visit. The trial court further found that prior to that date, Appellant's visitation with the Children "had been sporadic at best." As to financial support, the trial court recalled Appellant's testimony "that he was gainfully employed up until his incarceration began . . . yet he made no payments toward the support of the children other than the one-time payment of $2,900 in January or February of 2017,

---

[7] In its order terminating Appellant's parental rights, the trial court stated that "[Appellant's] incarceration began on November 15, 2017." Appellant testified that he was arrested on November 7, 2017 for criminal impersonation, a violation of his parole. He confirmed that he was charged with aggravated burglary on November 16, 2017. The criminal history report entered as a trial exhibit shows that Appellant pleaded guilty to criminal impersonation on November 15, 2017. Appellant testified that he was never released between the date he was arrested for criminal impersonation and the date he was charged with aggravated burglary. Based on Appellant's testimony read in conjunction with Appellant's criminal history report entered as a trial exhibit, we find that November 7, 2017 is the applicable incarceration date. This factual discrepancy does not change our analysis because it is undisputed that Appellant neither visited nor paid support for the Children during "the four (4) consecutive months immediately preceding [his] incarceration," regardless of whether the four months is calculated from November 7 or November 15 of 2017. Tenn. Code Ann. § 36-1-102(1)(A)(iv).

which [Appellant] testified was his tax refund." The court found that this payment was made outside of the relevant four-month period and met the definition of token support. Finally, the court found that the evidence at trial demonstrated Appellant's failure to visit and failure to support the Children was willful.

The record fully supports the trial court's findings. Appellant's argument on these issues consists only of excerpts from the trial transcript pertaining to matters outside the relevant four-month period. The parties do not dispute that Appellant last saw the Children on July 4, 2017. By that date, several months had passed since Appellant had visited the Children. Appellant testified that Appellees allowed him to see the Children whenever he requested and that they also transported the Children to him. Appellant admitted that his weekend visits with the Children ceased in April 2017. He explained that he did not want to stand in the way of the Children's Saturday softball practice, but this was his unilateral decision.

"Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children." Tenn. Code Ann. § 36-1-102(1)(H). There is no dispute that Appellant failed to pay support during the four-month period. The testimony established that Appellant made a one-time payment of $2,900.00 to Appellees as support for the Children. This amount was his income tax refund received by claiming the Children as his dependents, although they were living with Appellees during the relevant tax year, and was made well outside the relevant four-month period. The record shows that Appellant was aware of his duty to support his Children and that he had the ability to pay some support. Appellant confirmed that he was employed and working between six and seven days a week from May 2016, when he was released on parole, until his arrest in November 2017. Appellant's brief cites testimony about items he purchased for the Children during their visits from October 2016 through the spring of 2017. Even if these purchases had been made during the four months immediately preceding Appellant's incarceration, they would amount to token support given the circumstances of this case.

We conclude that Appellees proved by clear and convincing evidence that Appellant willfully failed to support and willfully failed to visit the Children during the relevant four-month period.

In addition to the grounds of abandonment by failure to support and by failure to visit, the trial court also found that Appellant abandoned the Children by wanton disregard. Tenn. Code Ann. § 36-1-102(1)(A)(iv). "Wanton disregard" is not a defined term, but this court has "repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a

wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867-68 (citations omitted). The relevant pre-incarceration period for conduct exhibiting wanton disregard referred to in section 36-1-102(1)(A)(iv) "is not limited to acts during the four-month period immediately preceding the incarceration." *In re Jeremiah T.*, No. E2008-02099-COA-R3-PT, 2009 WL 1162860, at *8 (Tenn. Ct. App. Apr. 30, 2009) (citing *In re Audrey S.*, 182 S.W.3d at 871).

In its order terminating parental rights, the trial court made the following findings:

> [T]he evidence at trial supports a finding that [Appellant] engaged in conduct prior to his incarceration that exhibits a wanton disregard for the welfare of the children pursuant to Tennessee Code Annotated 36-1-102(1)(A)(iv). Prior to [Appellant's] most recent incarceration . . . [he] had been incarcerated for all but three (3) years of his children's lives. At the time of trial, the children were almost eleven (11) years old, and had only known [Appellant] for brief periods and through sporadic visitation. [Appellant's] willful failure to visit the children, willful failure to support the children, history of consistent criminality and probation violations all constitute conduct that exhibits a wanton disregard for the welfare of the children.

Tennessee Code Annotated section 36-1-102(1)(A)(iv) represents the General Assembly's "commonsense notion that parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child" and that "[i]ncarceration severely compromises a parent's ability to perform his or her parental duties." *In re Audrey S.*, 182 S.W.3d at 866. "The actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015). In this case, the record exposes Appellant's choice to be a career criminal. Before the Children were born, Appellant collected multiple convictions for burglary and theft, as well as multiple probation violations. The birth of his Children did not reform Appellant's behavior. Appellant pleaded "no contest" to a charge of making terroristic threats, and was later convicted of aggravated burglary and sentenced to nine years in prison. He was released on parole, but soon violated the terms of probation and was reincarcerated. The behavior that caused Appellant to be incarcerated and awaiting trial on aggravated burglary charges at the time of the parental termination hearing "is part of a broader pattern of conduct that renders [him] unfit or poses a risk of substantial harm to the welfare of the child[ren]." *In re Audrey S.*, 182 S.W.3d at 866. The evidence clearly and convincingly

supports the trial court's finding that Appellant engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the Children.

We conclude that there is clear and convincing evidence to support the trial court's determination that Appellant's parental rights should be terminated on the grounds of abandonment by willful failure to visit, abandonment by willful failure to support, and abandonment by engaging in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the children.

D.
*Failure to Manifest Ability and Willingness to Assume
Custody or Financial Responsibility.*

The trial court found that Appellees had proven by clear and convincing evidence that Appellant's parental rights should be terminated pursuant to Tennessee Code Annotated section 36-1-113(g)(14), which provides as follows:

> A legal parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). This ground requires the petitioner to prove two elements by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1), (g)(14). First, a petitioner must prove that the parent failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14). Second, a petitioner must prove that placing the children in the parent's "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]." *Id*.

There is a split in authority regarding the proof required to establish the first element, specifically, whether parental rights can be terminated under section 36-1-113(g)(14) if a parent has manifested a willingness, but not an ability. *Compare In re Ayden S*., No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at \*7 (Tenn. Ct. App. May 31, 2018), *with In re Amynn K*., No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at \*12-15 (Tenn. Ct. App. June 20, 2018). In cases like this one where the parent has manifested neither a willingness nor an ability to assume custody or responsibility, we have upheld termination of parental rights on this ground. *See, e.g., In re J'Khari F*., No. M2018-00708-COA-R3-PT, 2019 WL 411538, at \*15 (Tenn. Ct. App. Jan. 31, 2019)

- 10 -

(noting both *In re Ayden S.* and *In re Amynn K.* but ultimately concluding that the petitioner presented sufficient evidence that "Mother was not able or willing to assume physical or legal custody of or financial responsibility for the Child"); *In re Colton B.*, No. M2018-01053-COA-R3-PT, 2018 WL 5415921, at *9-10 (Tenn. Ct. App. Oct. 29, 2018) *perm. app. denied* (Tenn. Jan. 22, 2019) (noting the split in authority but holding that it was unnecessary to adopt one approach because the parent had manifested neither an ability nor a willingness to assume custody or financial responsibility).

As to the second element, whether placing the child in the parent's custody "would pose a risk of substantial harm to the physical or psychological welfare of the child," we have explained:

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray*, 83 S.W.3d at 732).

Here, the trial court found that the evidence established the first element because Appellees have had exclusive physical custody of the Children since May 2015, Appellant had not attempted to become their custodian, and Appellant had not taken financial responsibility for the Children, save the one-time payment made in January or February of 2017. Clear and convincing evidence supports the trial court's finding that Appellant failed to manifest an ability and willingness to assume custody or financial responsibility of the Children. Appellant testified that he was employed and working between six and seven days a week from May 2016, when he was released on parole, until his arrest in November 2017. When asked why he did not "try to get custody of [his] children back," Appellant answered, "When I first got out of prison, I was trying to take care of myself. If I can't take care of myself, I can't take care of them and I'm not going to put them in a situation that I'm just barely making it and then put them through that. That's not right." This demonstrates an unwillingness to personally assume custody of the Children. Also, making only one payment toward the Children's support in so many years, despite gainful employment, demonstrates Appellant's unwillingness to assume financial responsibility. At the conclusion of his testimony, Appellant addressed the trial court as follows:

- 11 -

Regardless if I stay in prison or I get out, I'm not trying to take my children away from the [Appellees]. I'm not trying to get custody of them because I know when I get out, there is no way I can take care of them like they deserve to be taken care of by them. I will have to work up to that. I don't have a problem with them being in the [Appellees'] custody. That's not a problem. What I do have a problem with is taking my parental rights from me when I've never done anything wrong to them or [Appellees] adopting them and changing their name.

The trial court drew the proper conclusion from this testimony in finding that Appellees proved the first element of Tennessee Code Annotated section 36-1-113(g)(14) by clear and convincing evidence.

As to the second element, the trial court found that Appellant "has a lengthy criminal history and has been incarcerated for most of the children's lives. [Appellant's] convictions include, among others, domestic assault against Mother, aggravated burglary, and making terroristic threats." As the trial court recognized, "placing a child with a parent who had knowingly engaged 'in repeated criminal conduct that necessitated [the parent's] re-incarceration' would place the child at risk of physical or psychological harm." *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *15 (Tenn. Ct. App. June 20, 2018) (quoting *In re Ke'Andre C.*, No. M2017-01361-COA-R3-PT, 2018 WL 587966, at *11 (Tenn. Ct. App. Jan. 29, 2018)). The trial court also noted the Wayne County Juvenile Court's earlier finding that there was a substantial risk of harm if the Children were to be placed in Appellant's custody. The trial court further found that the Children had received "counseling to overcome their intense fear of being returned to their parents' care and custody," and credited Appellees' testimony that the Children's behavior markedly changed for the worse after communication or interaction with either parent.

Appellant's Tennessee criminal history report, considered alongside the Children's counseling records and the trial testimony, illustrate why placing the Children in Appellant's custody would pose a risk of substantial harm to their physical or psychological welfare. We conclude that the evidence of record clearly and convincingly supports the trial court's decision to terminate Appellant's parental rights pursuant to Tennessee Code Annotated section 36-1-113(g)(14).

## E.
### *Best Interest of the Children*

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Children. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. In making this determination, we are guided by the following non-exhaustive list of factors:

(i)     In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

Concerning the first factor, the trial court found that Appellant does not have a home at present and that, given his "status as a Range III offender, if [he] is convicted of the charges for which he is currently awaiting trial, he may be incarcerated for ten (10) years or more, during which time the children will reach the age of majority." Tenn. Code Ann. § 36-1-113(i)(1). The trial court found that Appellant did not maintain regular visitation or other contact with the Children, so he does not have a meaningful relationship with them. Tenn. Code Ann. § 36-1-113(i)(3), (4). Appellant was mostly absent from the Children's lives because he spent a significant amount of time incarcerated or living in Texas. *Id*. We credit the trial court's finding that the Children have been in Appellees' custody since May 2015 and are thriving in their care. The Children should continue permanency and stability in the home of Appellees, their adoptive parents. Tenn. Code Ann. § 36-1-113(i)(5). The trial court found that regardless of whether Appellant or Mother was the aggressor in the 2008 domestic assault with a knife, to which Appellant pleaded guilty, there was physical violence in the home while the Children were in Appellant's care. Tenn. Code Ann. § 36-1-113(i)(6). The trial court further found that Appellant could not provide a healthy and safe home environment for the Children because he was incarcerated. Tenn. Code Ann. § 36-1-113(i)(7). Finally, the court found that Appellant has not paid child support consistent with the child support guidelines. Tenn. Code Ann. § 36-1-113(i)(9).

Appellant's brief is devoid of facts or reasons supporting his conclusion that the trial court erred in the best interest analysis. The evidence in the record does not preponderate against the trial court's factual findings. Based on these facts and the record as a whole, we conclude that clear and convincing evidence supports a finding that termination of Appellant's parental rights is in the Children's best interest. Accordingly, we affirm the trial court.

## V.     CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary and consistent with this Opinion. Costs of the appeal are taxed to the appellant, Daniel V., for which execution may issue if necessary.

_____
JOHN W. McCLARTY, JUDGE